UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Eli Adams, an individual, and
Reyna Balboa, an individual,

Plaintiffs and
Counterclaim Defendants,

v.

Peter Innes, an individual,

Defendant and
Counterclaim Plaintiff.

Court File No. 0:26-cv-02415-JMB-SGE

**PLAINTIFFS ELI ADAMS AND REYNA BALBOA'S MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL DISMISSAL OF COUNTERCLAIMS**

Fed. R. Civ. P. 12(b)(6)

## INTRODUCTION

After Peter Innes faced an intense public backlash for accused misconduct, he executed a written Transfer Agreement to sell his Roblox game "*Forsaken*" (or, the "Game") to plaintiffs Eli Adams and Reyna Balboa. Now regretting his decision, Innes claims that the sale is void and unenforceable.

In essence, Innes is asking this Court to apply a special contracting standard for young adults. He wishes he had not executed the Agreement, and now seeks to have the Court unwind everything because he was "just three months past his eighteenth birthday." (Defendant and Counterclaim Plaintiff Peter Innes' Amended Answer, Affirmative Defenses, and First Amended Counterclaims ("Am. Answer" or "Am. Countercl."), Dkt. 34 ¶ 2.) To that end, he has generated 21 causes of action arising from this situation, including facially implausible claims like fraud, defamation, breach of bailment, and conversion. The Court should dismiss these untenable causes of action.

## FACTUAL BACKGROUND

Peter Innes is an adult. (Am. Countercl., Dkt. 34 ¶ 5). Innes created and operated a popular Roblox game called *Forsaken* and ran a Discord server dedicated to the game (the "*Forsaken* Discord"). (*Id.* ¶¶ 36-37.) On January 15, 2025, Innes made Adams a moderator with limited administrative powers on the *Forsaken* Discord. (*Id.* ¶ 55.)

On or about May 20, 2025, after a non-party posted a video to YouTube accusing Innes of "distributing child sexual exploitation material," Innes found himself at the center of a public campaign demanding that he dissociate from *Forsaken* and the *Forsaken* Discord Servers. (Am. Countercl., Dkt. 34 ¶¶ 4-5, 46-50.) Six days later, Innes messaged Adams asking, "do u think i could temporarily give you ownership of the discord servers & stuff[?]" because he felt "like it'd be best if we publicly shifted ownership around for a bit[.]" (*Id.* ¶ 58.) Adams agreed; Innes transferred control of the *Forsaken* Discord to Innes. (*Id.* ¶ 59.) Later that day, Adams posted a message on the *Forsaken* Discord announcing that "ownership of *Forsaken* has been transferred to myself [and Balboa]." (*Id.* ¶ 62 (italics added).)

Over the next month, the parties negotiated a written agreement. (Am. Countercl., Dkt. 34 ¶¶ 79-86.) On June 29, 2025—more than a month after Innes transferred the *Forsaken* Discord—he executed the *Forsaken* Transfer Agreement. (*Id.* ¶ 86.) By his own account, Innes reviewed the draft before signing. (*Id.* ¶ 87.) He even caught an omission in the draft Agreement based on the parties' discussion, which was then added. (*Id.* ¶ 88.)

On August 21, 2025, Innes signed an amendment to the Agreement, which added a 20% share of revenue from sales of a *Forsaken* plush doll to Innes' payout under the

Agreement, and recited that, except as amended, the Transfer Agreement "is unaffected and shall continue in full force and effect in accordance with its terms." (Am. Answer, Dkt. 34 ¶ 26.) Innes admits that he was paid in connection with the Transfer Amendment. (*Id.* ¶ 28.) He further admits that he directed plaintiffs to pay portions of his revenue share to third parties. (*Id.* ¶ 27.)

Innes first asserted that the Transfer Agreement is void and unenforceable in March 2026. (*See* Am. Answer, Dkt. 34 ¶ 34.) He alleges, in part, that: (1) the Agreement was procured by fraud, (2) plaintiffs' claimed ownership of Forsaken was defamatory, (3) plaintiffs breached their bailment of the Game's Discord server, (4) plaintiffs converted various servers and online accounts, and (5) plaintiffs owe Innes an accounting.

## ARGUMENT

### I. Legal standards.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Warmington v. Bd. of Regents of Univ. of Minn.*, 998 F.3d 789, 795 (8th Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (cleaned up). Courts need not "accept as true a legal conclusion couched as a factual allegation," as any legal conclusion "must be supported by factual allegations.'" *Id.* But if there are "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Id.*

"Rule 9(b) requires that circumstances constituting fraud be pleaded with particularity." *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009) (citing Fed.

R. Civ. P. 9(b)). This requires that the plaintiff plead "such matters as the time, place, and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." *Id*. (quoting *Schaller Tel. Co. v. Golden Sky Sys., Inc.*, 298 F.3d 736, 746 (8th Cir. 2002)). "In other words, the complaint must plead the 'who, what, where, when, and how of the alleged fraud.'" *Id.* (quoting *United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006)).

## II. The challenged counterclaims are insufficiently pled.

### A. Count II and VIII: Fraud.

Innes asserts the same theory of fraud in two different counts, seeking to rescind the Transfer Agreement on the basis of fraud and also as a standalone claim. (Am. Countercl., Dkt. 34 ¶¶ 123 A, 153-58.) Both attempts fail.

In Minnesota,[1] a fraud claim has five elements: "(1) a false representation of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made without knowing whether it was true or false; (3) with the intention to induce action in reliance thereon; (4) that the representation caused action in reliance thereon; and (5) pecuniary damages as a result of the reliance." *U.S. Bank N.A. v. Cold Spring Granite Co.*, 802 N.W.2d 363, 373 (Minn. 2011).

[1] Minnesota law applies to the Transfer Agreement, attached to Complaint as Ex. A, Dkt. 1-1 ("Transfer Agreement") at ¶ 10(b). Innes does not seem to dispute this. *See e.g.* Am. Countercl., Dkt. 34 ¶ 161.

In federal court, "a party must state with particularity the circumstances constituting fraud[.]" Fed. R. Civ. P. 9(b). This greater specificity provides the party accused of fraud "a higher degree of notice than that required for other claims," so that the accused party can "respond specifically and quickly to the potentially damaging allegations." *Joshi.*, 441 F.3d at 556. To meet Rule 9(b)'s particularity requirement, "the complaint must plead such facts as the time, place, and content of the [party's] false representations, as well as the details of [its] fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result." *Id*. And if "multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud." *Streambend Props. II, LLC v. Ivy Tower Minneapolis, LLC*, 781 F.3d 1003, 1013 (8th Cir. 2015). In other words, "the complaint must identify the 'who, what, where, when, and how' of the alleged fraud." *Joshi*, 441 F.3d at 556.

Although the fraud claim is alleged against both Adams and Balboa, there are *no* allegations regarding ***Balboa's*** alleged representations. Instead, the fraud claim alleges that Adams made representations regarding the *Forsaken* Discord Servers then jumps to alleging that "Adams and Balboa then used their wrongfully obtained control of the *Forsaken* Discord Servers to coerce Peter into executing the Transfer Agreement and surrendering *Forsaken*." (Am. Countercl., Dkt. 34 ¶ 157.) The fraud claims against Balboa—which allege no representations by her—are therefore insufficiently pled and must be dismissed.

With respect to Adams, Innes alleges just a single misrepresentation: that on May 26, 2025, Adams allegedly represented to Innes that the transfer of control over the

*Forsaken* Discord Servers would be temporary. (Am. Countercl., Dkt. 34 ¶¶ 123 A, 1.) Innes then alleges that the Transfer Agreement—which happened over a month later—was purportedly "procured by fraud." (Am. Countercl., Dkt. 34 ¶ 123 A.) But he does not allege facts demonstrating reliance on the purported misrepresentation in executing the Transfer Agreement; he merely alleges reliance as a conclusory matter. (Am. Countercl. ¶ 123 A.)

Nor could he allege as much. Innes alleges that Adams and Balboa made "clear that they [had] no intention" of returning the Discord Servers "[j]ust over two hours" after the Discord Servers were transferred. (Am. Countercl., Dkt. 34 ¶¶ 62-64.) And he admits that the Transfer Agreement was executed over a month after he transferred control of the Discord Servers. (Am. Answer, Dkt. 34 ¶ 21.) So, he cannot have relied on the alleged misrepresentation when he executed the Transfer Agreement because he alleges that he knew about the alleged misrepresentation at the time. *See Hoyt Props., Inc. v. Prod. Res. Grp., L.L.C.*, 736 N.W.2d 313, 321 (Minn. 2007) (" . . . a party can reasonably rely on a representation unless the falsity of the representation is known or obvious to the listener."). Innes' fraud claims should be dismissed as a matter of law.

**B. Count XIII: Defamation.**

For his defamation counterclaim, Innes alleges that "Adams permanently removed [Innes] from the *Forsaken* Discord Servers, and posted a message to the entire Server, falsely announcing that [Innes] had transferred the *Forsaken* Property to [Adams and Balboa] to the *Forsaken* community[.]" (Am. Countercl., Dkt. 34, ¶ 62.) "Adams' May 26, 2025 public statements asserting that ownership and control of *Forsaken* had

transferred to Adams and Balboa were false and defamatory." (*Id.* ¶ 189.) That portion of the defamation counterclaim should be dismissed.

In Minnesota, a defamation claim requires proof that: "(1) the defamatory statement was communicated to someone other than the plaintiff; (2) the statement is false; (3) the statement tends to harm the plaintiff's reputation and to lower [the plaintiff] in the estimation of the community, and (4) the recipient of the false statement reasonably understands it to refer to a specific individual." *McKee v. Laurion*, 825 N.W.2d 725, 729–30 (Minn. 2013) (cleaned up). "A defamatory statement is one that harms the plaintiff's reputation and lowers him in the estimation of the community." *Schlieman v. Gannett Minn. Broad., Inc.*, 637 N.W.2d 297, 307 (Minn. App. 2001). "The district court makes an initial determination of whether the statements are reasonably capable of carrying a defamatory meaning." *Id*.

As a matter of law, Adams' statement about the transfer of *Forsaken* is not capable of defamatory meaning. "In addressing defamatory meaning, the dispositive question becomes whether a reasonable factfinder could conclude that the statements imply an assertion that is defamatory." *Id.* at 308 (cleaned up). In *McKee*, for example, the Minnesota Supreme Court rejected a defamation claim when the plaintiff doctor was alleged to have left the hospital room without talking to the family of a man who had suffered a stroke, as this was not capable of defamatory meaning. 825 N.W.2d at 732. In *Yang v. Robert Half Int'l, Inc.*, the Eighth Circuit concluded that, as a matter of law, the claim that the plaintiff had tripped someone was not capable of defamatory meaning. 79 F.4th 949, 963 (8th Cir. 2023).

No reasonable factfinder could conclude that a statement about transferred ownership of *Forsaken* is capable of defamatory meaning. It is simply a dry recitation of facts; it does not impugn Innes' reputation in any way, nor does it have any ability to lower him in the estimation of the community. At a minimum, it is less capable of defamatory meaning than the claim that a doctor walked out of a room without consoling a family, or the claim that a plaintiff tripped someone else—both of which have been rejected as a matter of law. *See McKee*, 825 N.W.2d at 732; *Yang*, 79 F.4th at 963. Thus, this portion of Innes' defamation counterclaim should be dismissed.

**C. Count IV: Breach of Bailment.**

Innes next alleges that Adams and Balboa breached obligations of a bailment, on the theory that Innes temporarily gave control of the *Forsaken* Discord Servers to Adams, therefore making Adams a bailee. (Am. Countercl., Dkt. 34 ¶¶ 133-34.) This claim should be dismissed.

"A bailment occurs when goods are delivered, without transferal of ownership, under an express or implied agreement that the goods will be returned." *Duxbury v. Spex Feeds, Inc.*, 681 N.W.2d 380, 386 (Minn. App. 2004) (citing *Wallinga v. Johnson*, 131 N.W.2d 216, 218 (Minn. 1964)). "The generally accepted test is whether there is a full transfer of the property, amounting to relinquishment of exclusive possession, control and dominion over the property for the duration of the relationship." *Colwell v. Metro. Airports Comm'n, Inc.*, 386 N.W.2d 246, 248 (Minn. App. 1986).

To create a bailment relationship, "there must be delivery of ***goods*** from one person (the bailor) to another (the bailee)[.]" *Nat'l Fire Ins. Co. v. Commodore Hotel, Inc.*, 107

N.W.2d 708, 709 (Minn. 1961) (emphasis added). Though "goods" has never been expressly defined, the plain meaning of this term does not extend to a Discord server. For example, the term "goods" as used in Minnesota's Uniform Commercial Code ("UCC") means things "which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (article 8) and things in action." Minn. Stat. § 336.2-105(1). Consistent with that UCC definition, Minnesota's appellate courts have found grain (*Duxbury*), cars (*Colwell*), and other tangible and movable items to be "goods" subject to bailment.

A Discord server is indisputably intangible property. (*See* Am. Countercl., Dkt. 34 ¶ 115 (alleging that plaintiffs took "administrative control" of the "server")). Thus, under Minnesota bailment law, a Discord server does not constitute a "good." The Court should therefore dismiss Count IV.

### D. Counts IX, X, and XI: Conversion of *Forsaken* Discord Servers, Roblox Group, Associated Accounts, and the Spectre Account.

Innes "alleges that Adams and Balboa converted the *Forsaken* Discord Servers." (Am. Countercl, Dkt. 34 ¶ 160.) He also alleges that plaintiffs converted the "*Forsaken* Roblox Group, the Group Owner account, and the associated operating accounts." (*Id.* ¶ 170.) Finally, Innes alleges that he "owned and had the right to possess and control the Spectre Account and the funds it contained[.]" (*Id.* ¶ 178.)

"Conversion occurs when a person willfully interferes with the personal property of another without lawful justification, depriving the lawful possessor of use and possession." *Staffing Specifix, Inc. v. TempWorks Mgmt. Servs., Inc.*, 896 N.W.2d 115, 125 (Minn. App.

2017) (cleaned up). "The elements of common law conversion are: (1) plaintiff holds a property interest; and (2) defendant deprives plaintiff of that interest." *Id*. Minnesota courts have determined that, under Minnesota law, intangible assets are not "property" that can be converted. *See TCI Bus. Cap. Inc. v. Five Star Am. Die Casting, LLC*, 890 N.W.2d 423, 428-30 (Minn. App. 2017).

As noted above, a Discord server is indisputably intangible property, if it is property at all.[2] Similarly, the *Forsaken* Roblox Group and associated accounts are intangible property. Accordingly, because Minnesota does not recognize conversion of intangible property, Counts IX and X fail as a matter of law. *TCI Bus. Cap. Inc.*, 890 N.W.2d at 428-30.

With respect to the Spectre Account, the Minnesota Court of Appeals in *TCI Business Cap.* noted that: "the premise that money in an intangible form is property . . . is without precedent in Minnesota law." 890 N.W.2d at 428. For this reason, the court held that a conversion claim "is viable with respect to money only if the money is in a tangible form (such as a particular roll of coins or a particular stack of bills) and is kept separate from other money." *Id*. at 429. Here, Innes alleges that he "owned and had the right to possess and control the Spectre Account and the funds it contained," but he does not allege that the Spectre Account contained specific tangible money that was converted. (Am. Countercl, Dkt. 34 ¶ 178.)

Thus, Counts IX, X, and XI should be dismissed for failure to state a claim.

---

[2] For the purposes of this motion, plaintiffs are not challenging whether a Discord server is "property" that Innes owned, though this is far from clear.

**E. Count XVII: Accounting.**

In Count XVII, Innes alleges that he "is entitled to a full and complete accounting of all revenues, proceeds, and other benefits derived from the *Forsaken* Property and all accounts associated therewith, from the date Adams and Balboa assumed control to the present." (Am. Countercl. Dkt. 34 ¶ 212.) He alleges that "[t]he amounts owed to [Innes] cannot be determined without an accounting." (*Id.* ¶ 211.)

"The remedy of equitable accounting is available . . . when a fiduciary owes an equitable duty to account and when the accounts at issue are exceedingly complicated." *United Prairie Bank-Mountain Lake v. Haugen Nutrition & Equip., LLC*, 813 N.W.2d 49, 57 n.3 (Minn. 2012); *see also* 1A C.J.S. Accounting § 21 (2017) ("The remedy of an equitable accounting is available when a fiduciary owes an equitable duty to account."). There must also be an "absence of an adequate remedy at law." *Landgraf v. Ellsworth*, 126 N.W.2d 766, 769 (Minn. 1964). "An equity court has jurisdiction to order a fiduciary to account if the fiduciary is obligated to account for his or her use of the plaintiff's property, or when the fiduciary is accused of breach of trust." 1A C.J.S. Accounting § 21 (2017).

Accounting is a remedy, not an independent cause of action, and the claim should be dismissed for that reason. *Gilk v. Fisher*, No. CV 25-2158 (JRT/LIB), 2026 WL 884100, at *14 (D. Minn. Mar. 31, 2026) (dismissing standalone accounting claim). Furthermore, Innes does not allege that Adams and Balboa were his fiduciaries or owed him an equitable duty to account. He therefore failed to allege entitlement to an accounting remedy under Minnesota law, and Count XVII should be dismissed.

## III. Leave to amend should be denied.

The Court should deny leave to amend, as any amendment would be futile. The defects in these counterclaims are legal, not factual, and no additional allegation cures them. No additional pleadings can make a statement about ownership of *Forsaken* defamatory as a matter of law. A Discord server will not become a tangible good subject to bailment, or property subject to conversion under Minnesota law, however Innes recharacterizes it. He cannot plead reliance on a representation he alleges he knew was false more than a month before he signed the Transfer Agreement. And no amendment can make Adams and Balboa his fiduciaries when his own pleading describes them as counterparties to a negotiated sale.

Innes pleaded these claims knowing the facts, and already amended his counterclaims after conferral on this motion. Where a party "already had the opportunity to amend the complaint and cure its defects," denial of leave is appropriate. *Moses.com Secs., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1065 (8th Cir. 2005).

## CONCLUSION

Innes' counterclaims are a grab-bag of ill-fitting claims. He has manufactured 21 claims arising out of what is, at base, a single agreement. Innes' fraud, defamation, breach of bailment, conversion, and accounting claims should be dismissed without leave to amend.

Dated: September 22, 2026.

**TAFT STETTINIUS & HOLLISTER LLP**

By: *s/ Andrew S. Dosdall*
Andrew S. Dosdall, Bar No. 0391076
ADosdall@Taftlaw.com
2200 IDS Center 80 South 8th Street
Minneapolis, MN 55402-2210
Telephone: (612) 977-8400
Facsimile: (612) 977-8650

and

Joseph M. Levy, OSB #231905 (*Pro Hac Vice*)
JosephLevy@MarkowitzHerbold.com
**MARKOWITZ HERBOLD PC**
1455 SW Broadway, Suite 1900
Portland, OR 97201
Telephone: (503) 295-3085
Facsimile: (503) 323-9105

*Attorneys for Plaintiffs*
*Eli Adams and Reyna Balboa*