UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Eli Adams, an individual, and
Reyna Balboa, an individual,

Plaintiffs and
Counterclaim Defendants,

v.

Peter Innes, an individual,

Defendant and
Counterclaim Plaintiff,

v.

EHA Consulting, LLC, a Louisiana limited liability company,

Additional Counterclaim
Defendant.

Court File No. 0:26-cv-02415-JMB-SGE

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL DISMISSAL OF COUNTERCLAIMS**

## INTRODUCTION

In his Amended Counterclaim, Peter Innes alleges that he was lied to in May 2025 and that he discovered the lie within hours. He uses that alleged lie to try to invalidate a written contract that he signed over a month later with the same parties. This is not fraud. It is not conversion. Innes signed the contract. The contract stands.

Innes transferred control of the Discord Servers to plaintiff Eli Adams. After receiving control, Adams publicly announced that ownership of the Roblox game "Forsaken" had been transferred to him and plaintiff Reyna Balboa. He did not mention Innes in this statement. This is not defamation.

Out of this, Innes tries to construct claims for fraud, defamation, conversion, breach of bailment, and accounting. These claims are legally insufficient and should be dismissed with prejudice.

## ARGUMENT

### I. Innes' fraud claims should be dismissed with prejudice.

#### A. Innes fails to state a claim for fraudulent inducement.

Innes' attempt to rescind the Transfer Agreement for fraudulent inducement in Count II(A) is facially deficient. He is missing reliance. To plead a fraud claim, a party must state with particularity the circumstances constituting the fraud, Fed. R. Civ. P. 9(b), including "that the representation caused action in reliance thereon[.]" *U.S. Bank N.A. v. Cold Spring Granite Co.*, 802 N.W.2d 363, 373 (Minn. 2011). A party alleging fraud must allege reasonable reliance, and "may rely on the representation *so long as it is not known by the listener to be false*[.]" *Hoyt Props., Inc. v. Prod. Res. Grp., L.L.C.*, 736 N.W.2d 313, 321 (Minn. 2007) (emphasis added).

As Innes concedes, the only alleged misrepresentation is Adams' purported promise that the transfer of the Discord Servers "would be temporary." (Defendant and Counterclaim Plaintiff Peter Innes' Amended Answer, Affirmative Defenses, and First Amended Counterclaims ("Am. Answer" or "Am. Countercl."), Dkt. 34, ¶ 123(A)(i); *see also* Innes' Mem. of Law in Opp. to Mot. for Partial Dismissal ("Innes' Mem. in Opp.") Dkt. 49 at 12.) But Innes also admits that, the same evening, Adams and Balboa "ma[d]e clear that they ha[d] no intention to return the Discord Servers," and that Adams refused a demand for their return the next morning. (Am. Countercl., Dkt. 34 ¶¶ 62-64, 69.) All of

this occurred more than a month before the Transfer Agreement was executed. (Am. Answer, Dkt. 34 ¶ 21). He cannot have reasonably relied on a purported misrepresentation that he discovered long before the Transfer Agreement was executed, *Hoyt Props.*, 736 N.W.2d at 321, and so the Transfer Agreement cannot be a product of the purported fraud.

Recognizing this facial deficiency, Innes asserts that duress is a species of fraud, and proceeds to gesture generally at his duress allegations to save the fraud claim. (Innes' Mem. in Opp., Dkt. 49 at 15-16.) But fraud and duress are different legal theories. *See* Minn. Ct. R. Civ. P. 8.03 (listing "duress" and "fraud" as distinct affirmative defenses); see also Fed. R. Civ. P. 8(c)(1) (same). Innes' theory that he was "coerce[d]" into executing the Transfer Agreement by unlawful conduct is pleaded in his duress counterclaim, and plaintiffs have not moved to dismiss the duress portion of the counterclaim.[1] Plaintiffs have instead moved to dismiss the independent fraudulent inducement theory because Innes has failed to plead reasonable reliance in connection with the execution of the Transfer Agreement.

**B. Innes' standalone fraud claim fails as well.**

Separate from fraudulent inducement, Innes attempts to defend his standalone fraud claim (Count VIII) by arguing that the execution of the Transfer Agreement is just "part of the harm" of the alleged fraud, and that the alleged fraud solely concerned the "temporary" transfer of the Discord Servers. (Innes' Mem. in Opp., Dkt. 49 at 14.) This reformulation fails as well.

---

[1] Plaintiffs do not endorse the merits of this counterclaim. Though plaintiffs have not moved to dismiss it at this time, it is nonetheless facially deficient for other reasons.

In an attempt to supply the needed specificity to support Innes' claim for fraud, Innes alleges three facts: (1) that Adams removed him from the Discord Servers after the transfer, (2) that Adams publicly stated he and Balboa were the owners of Forsaken, and (3) that Balboa later said they withheld the Discord Servers to stop a sale. (Am. Countercl., Dkt. 34 ¶ 155.) Innes does not allege that any of these actions contradict a prior representation—*e.g.*, that Adams promised not to ban Innes or make any public statement—and thus none are evidence that Adams made any misrepresentation. Indeed, Innes alleges that he proposed that it would be "best if we publicly shifted ownership around for a bit / so that nobody's getting harassed," and that Adams responded that Innes would "work in the background" while Adams and Balboa "act as the faces." (Am. Countercl., Dkt. 34 ¶¶ 58, 60.) These actions are consistent with their discussion to redirect the public's attention away from Innes, and so Innes' sole allegations meant to bolster fraud fail to meet the Rule 9(b) particularity requirement. And the promise of a "temporary" transfer cannot support a fraud claim precisely because the parties executed the Transfer Agreement a month later, after the alleged misrepresentation was uncovered, thereby making the transfer permanent and leaving no way to assess whether the transfer was ever intended to be temporary.

On top of this defect, it is facially implausible to plead that, as a result of an alleged misrepresentation that Innes discovered a month earlier, he suffered harm by formally executing the Transfer Agreement with plaintiffs. Again, a party cannot allege that they were defrauded by a representation "known by the listener to be false[.]" *Hoyt Props.*, 736 N.W.2d at 321. As the Minnesota Supreme Court has put it: if a purchase agreement is

executed "after the fraud is discovered, the purchaser cannot say that he sustained this damage by reason of the fraud." *Thompson v. Libby*, 31 N.W. 52, 53 (Minn. 1886). This general principle was applied in *Clements Auto Co. v. Serv. Bureau Corp.*, where the Eighth Circuit rejected a plaintiff's attempt to recover costs for alleged fraud when those costs were incurred after "the date beyond which there could be reliance[.]" 444 F.2d 169, 189 (8th Cir. 1971). Thus, because Innes claims to have discovered the alleged fraud within hours of transferring the Discord Servers, he cannot claim to have been harmed by a purported misrepresentation he had long since discovered when he executed the Transfer Agreement. (Am. Countercl., Dkt. 34 ¶¶ 62-64). Count VIII should be dismissed.

**C. Innes fails to state a fraud claim against Balboa.**

Innes' fraud claims against Balboa fail for another reason. Innes failed to allege any misrepresentation by Balboa—which Innes does not dispute—and a fraud claim requires an alleged misrepresentation. *U.S. Bank*, 802 N.W.2d at 373. Effectively conceding that there is no standalone fraud claim against Balboa, Innes instead tries to salvage this claim by relying on an aiding and abetting theory. (Innes' Mem. in Opp., Dkt. 49 at 14-15 (citing *Witzman v. Lehrman, Lehrman & Flom*, 601 N.W.2d 179, 187 (Minn. 1999)). This does not save the claim.

"Under Minnesota law, the scienter (knowledge requirement) for aiding and abetting is 'actual knowledge.'" *Zayed v. Associated Bank, N.A.*, 913 F.3d 709, 715 (8th Cir. 2019) (citation omitted). "[T]he particularity requirements of Rule 9(b) apply to claims of aiding and abetting fraud no less than to direct fraud claims." *E-Shops Corp. v. U.S. Bank Nat'l Ass'n*, 795 F. Supp. 2d 874, 877 (D. Minn. 2011), *aff'd*, 678 F.3d 659 (8th

Cir. 2012). Yet Innes alleges Balboa's knowledge only in conclusory terms (Am. Countercl., Dkt. 34 ¶ 115), and pleads no facts showing that she knew of Adams' promise—let alone that she knew it was false when made. To the contrary, Innes' own pleading quotes Balboa telling him that evening that she "did not know this was going to be temporary." (*Id.* ¶ 64.) Otherwise, he alleges only conduct she took after the transfer that was connected to control of Forsaken. This is not enough. "A plaintiff must show more than awareness of the conduct in question, that it raised red flags, or even that it amounted to gross negligence, but must show that the defendant was aware of the wrongfulness of the challenged conduct." *Kamal v. Baker Tilly US, LLP*, No. 21-cv-1549 (MJD/DTS), 2022 WL 1050053, at *10 (D. Minn. Apr. 7, 2022) (citation omitted). Thus, the fraud claims against Balboa—including those that rest on aiding and abetting—should be dismissed.

**II. Innes fails to allege that Adams made a defamatory statement.**

Innes' defamation claim fails as a matter of law because Adams' public statement about transferred control of Forsaken is not "defamatory." It was a recitation of facts that had no tendency to harm Innes' reputation or "lower[] him in the estimation of the community." *Schlieman v. Gannett Minn. Broad., Inc.*, 637 N.W.2d 297, 307 (Minn. Ct. App. 2001).

The parties agree that Innes' defamation claim against Adams is based solely on the following public announcement that Adams posted to Discord:



Hytoko SLAY 5/26/25, 4:28 PM

[redacted]

Hello everyone.

I come here to speak about the future of Forsaken and of what's to come.

As many of you know things have been rocky. I wanted to come out and publicly speak about the future of Forsaken.

Following recent things, and agreements within the team, **ownership of Forsaken has been transferred to myself, @Hytoko, and @Basil (@cowoika)**. This transfer of ownership will not affect the game or upcoming content for it.

This hasn't been done lightly either. To be completely honest and more casual I'm a bit terrified, and I think Basil is too. We want only what is best for Forsaken, the community, and the team surrounding it.

Not everything related to the transfer has been completed yet. There are still things that are actively being transferred to us as this announcement goes out. But I believe it's better for everybody if this announcement reaches the public as soon as possible.

I hope you all still look forward to what Forsaken has in store. More importantly...I hope I can make all of you happy with what's to come.

- Hytoko

1

(Am. Countercl., Dkt. 34 ¶ 63; Innes' Mem. in Opp., Dkt. 49 at 17.) Innes does not allege that anything in this announcement attacked Innes directly. Instead, Innes' argument concedes that his claim is based entirely on implication—*i.e.*, that "[a] reasonable reader could understand the announcement to mean that [Innes] had been removed from his own game because of the accusations[.]" (Innes' Mem. in Opp., Dkt. 49 at 17.)

Under Minnesota law, "[d]efamation by implication occurs when a defendant (1) juxtaposes a series of facts to imply a defamatory connection between them; or (2) creates a defamatory implication by omitting facts." *Metge v. Cent. Neighborhood Improvement Ass'n*, 649 N.W.2d 488, 498 (Minn. Ct. App. 2002) (citing *Diesen v. Hessburg*, 455 N.W.2d 446, 450 (Minn. 1990)). This is not a low bar. In *Metge*, for example, the former executive director of a neighborhood association sued over an internet posting stating that $110,000 of the association's funds were "missing," pointing out that the plaintiff was the executive director "at that time," and calling for accountability for money "clearly misappropriated." 649 N.W.2d at 494. The court nonetheless affirmed summary judgment, concluding that the posting did "not contain such an omission or juxtaposition of facts as would be necessary to establish genuine issues of material fact for defamation by implication." *Id.* at 498.

In *Zielinski v. Clorox Co.*, 450 S.E.2d 222, 226 (Ga. Ct. App. 1994), the Georgia Court of Appeals addressed a case similar to this one. There, an employee was being investigated for theft (which he did not commit), leading to his suspension. The plaintiff's plant manager called an all-plant meeting and announced that the plaintiff had been suspended in connection with the theft. *Id.* After this, the plaintiff's employer posted the

plaintiff's termination notice on a bulletin board, which the plaintiff claimed had defamed him because it implied that the accusations of theft were true. The court rejected this contention, noting that, "[e]ven if it confirmed the suspicions," a "single true, unambiguously noncritical statement" does not become defamatory because of "rumors or suspicions others may have received." *Id.*

The same is true here. Adams made an unambiguously noncritical statement that ownership of Forsaken had been transferred, which is not susceptible to a defamatory meaning. Even assuming for the purposes of this motion that Adams' statement about ownership was false (as Innes contends), a false statement is not alone defamatory. *See McKee v. Laurion*, 825 N.W.2d 725, 733 (Minn. 2013) (holding that a statement did not place the plaintiff "in a negative light even if it [was] false"). No aspect of Adams' public statement was critical of Innes; it did not even mention him. No reasonable reader would read the statement as anything more than an acknowledgment that *Forsaken* was transferred because "things have been rocky," the truth of which Innes does not contest. Indeed, Innes alleges that he himself proposed that ownership be "publicly shifted . . . around for a bit" to quell the harassment. (Am. Countercl., Dkt. 34 ¶ 58.) An announcement that did what Innes asked cannot carry a defamatory implication about why he asked. This statement cannot support a claim of defamation by implication.

## III. Innes cannot bring a breach of bailment claim with respect to intangible property.

Innes' breach of bailment claim must be dismissed because there was never a "delivery of *goods* from one person (the bailor) to another (the bailee)[.]" *Nat'l Fire Ins.*

*Co. v. Commodore Hotel, Inc.*, 107 N.W.2d 708, 709 (Minn. 1961) (emphasis added). The parties agree that the term "goods" has never been expressly defined in Minnesota, but in other contexts (like the UCC), Minnesota law is clear that "goods" refers to things which are "movable at the time of identification," indicating that the term "goods" applies only to tangibles. Minn. Stat. § 336.2-105(1). Innes does not dispute that this is a pure issue of law.

At most, the Minnesota Supreme Court has previously concluded that bailment could extend to an "intangible represented by an indispensable instrument," *i.e.*, tangible property like a pledged stock certificate. *Koch v. Han-Shire Invs., Inc.*, 140 N.W.2d 55, 62 (Minn. 1966); *see also State v. Bordeaux*, 352 Or. App. 327, 334-35 (2026) (declining to "extend bailment to intangible location data" and observing that Oregon "bailment cases have focused on physical property, not intangible data"). Innes does not plead that Adams or Balboa were bailees of any tangible property that hosted the Discord Servers, like the physical server or a computer. So, the claim should be dismissed.

Innes cites *In re Target Corp. Customer Data Sec. Breach Litig.*, but this decision does not lend Innes any support. There, the court stated that, "*[e]ven if Plaintiffs are correct* that intangible property such as their personal financial information can constitute property subject to bailment principles," the plaintiffs' claims would nonetheless fail. 66 F. Supp. 3d 1154, 1177 (D. Minn. 2014) (emphasis added). In other words, the court did not hold or even suggest that intangible property is subject to bailment principles. The court merely said that, even if intangible property *could* be subject to bailment, the *Target* plaintiffs' claims would still fail. This does not support Innes' claim.

## IV. Minnesota does not recognize conversion of intangible property.

Innes' claim for conversion fails for a similar reason: Minnesota courts do not recognize conversion of intangible property. *See TCI Bus. Cap., Inc. v. Five Star Am. Die Casting, LLC*, 890 N.W.2d 423, 429 (Minn. Ct. App. 2017) ("As far as our research reveals, all the opinions of the supreme court on the subject of conversion are concerned with tangible personal property, *i.e.*, items that can be seen and touched."). As with bailment, Innes does not dispute that this is a pure issue of law.

In his opposition, Innes attempts to minimize *TCI* without success. In *TCI*, the court cited a prior Minnesota decision (*Halla v. Norwest Bank Minn., N.A.*, 601 N.W.2d 449 (Minn. Ct. App. 1999)), and read it to mean that "a conversion claim is viable with respect to money only if the money is in a tangible form," in light of the fact that "all the opinions of the supreme court on the subject of conversion are concerned with tangible personal property, *i.e.*, items that can be seen and touched." 890 N.W.2d at 428-29. The *TCI* court stated that "this understanding is consistent with the traditional common-law rule that an electronic financial transaction cannot be the basis of a conversion claim." *Id.* Thus, *TCI* and *Halla* together strongly suggest that Minnesota does not recognize conversion of intangible property.

Innes cites no Minnesota authority that comes close to cutting the other way. He relies only on *Sprinkler Warehouse, Inc. v. Systematic Rain, Inc.*—which allowed intangible property to be garnished—to establish that intangible property can also be converted. (Innes' Mem. in Opp., Dkt. 49 at 21 (citing 859 N.W.2d 527, 532 (Minn. Ct. App. 2015), *aff'd*, 880 N.W.2d 16 (Minn. 2016)).) Innes fails to point out that the

garnishment statute discussed in *Sprinkler Warehouse* expressly permits garnishment of "*intangible* or tangible personal property of the debtor in the possession or under the control of the garnishee[.]" Minn. Stat. § 571.73, subd. 3(3) (emphasis added). It is therefore unsurprising that the court in *Sprinkler Warehouse* concluded that intangible property could be garnished, given that the statute says so. 859 N.W.2d at 532. The same cannot be said of conversion.

Left only with adverse Minnesota authority like *TCI* and *Halla*, Innes resorts to the Ninth Circuit and New York caselaw to salvage his claim. Neither the Ninth Circuit nor New York courts can override the decisions of Minnesota courts when evaluating the viability of a conversion claim under Minnesota law, though. "Under the *Erie* doctrine, a federal court is bound by the decisions of the state's highest court." *Leonard v. Dorsey & Whitney LLP*, 553 F.3d 609, 612 (8th Cir. 2009) (citation omitted). "If the state's highest court has not clearly spoken," then federal courts must "rely on the decisions of intermediate state courts," unless there is persuasive evidence that "the highest state court would decide the issue differently." *Id.* Thus, absent persuasive data that the Minnesota Supreme Court would hold otherwise, this Court should follow *TCI* and *Halla*. Innes' conversion claim should therefore be dismissed.

## V. Innes is not entitled to an equitable accounting because plaintiffs owe him no fiduciary duty.

Innes' accounting claim should be dismissed because it is not a standalone claim, and Innes does not defend it as one. *Gilk v. Fisher*, No. 25-cv-2158 (JRT/LIB), 2026 WL 884100, at *14 (D. Minn. Mar. 31, 2026) (dismissing standalone accounting claim). To

receive an accounting, he must plead a claim which entitles him to an accounting. *See Dean v. CMPJ Enters., LLC*, No. A17-1839, 2018 WL 3614146, at *8 (Minn. Ct. App. July 30, 2018) (affirming dismissal of equitable accounting because plaintiffs "did not have a valid underlying claim"). He does not do so.

*First*, Innes asserts that he is entitled to an accounting by virtue of his fraud claim. (Innes' Mem. in Opp., Dkt. 49 at 25.) For the reasons explained above, Innes' fraud claims (in Count II and Count VIII) fail as a matter of law. (*See supra* at X.) So, an equitable accounting claim cannot survive on this basis.

*Second*, Innes pleads no other claim that entitles him to an accounting. He argues that an equitable accounting can be available when there is *either* a fiduciary relationship between the parties *or* when the accounts are "exceedingly complicated," thereby suggesting that any claim can give rise to an accounting if complicated accounts are involved. (Innes' Mem. in Opp., Dkt. 49 at 25 (citing *United Prairie Bank-Mountain Lake v. Haugen Nutrition & Equip., LLC*, 813 N.W.2d 49, 57 n.3 (Minn. 2012)).) Innes does not otherwise explain why there is an "absence of an adequate remedy at law." *Landgraf v. Ellsworth*, 126 N.W.2d 766, 769 (Minn. 1964). He solely rests on the notion that complexity alone can support an equitable accounting.

Though Innes is correct that *United Prairie* can be read to imply that complexity alone supports an accounting, there is other strong authority suggesting that complexity by itself is insufficient. In *Bond v. Welcome*, for example, the Minnesota Supreme Court considered when a case was equitable such that a party had no right to a jury trial. 63 N.W. 3, 4 (Minn. 1895). As the court put it, the case is an equitable one if "it will involve the

taking and adjustment of complicated accounts between parties sustaining fiduciary relations, or, in other words, if it is an action for an accounting." *Id.* This suggests that mere complexity is insufficient to deny a right to a jury, and that a fiduciary relationship is required to entitle a party to an accounting.

Recent unpublished decisions by the Minnesota Court of Appeals also support a conjunctive reading based on their formulation of the test. *See, e.g.*, *Zurn v. Zurn*, No. A24-0505, 2025 WL 301176, at *8 (Minn. Ct. App. Jan. 27, 2025) (rejecting an accounting concerning a breach of trust because the accounts were not exceedingly complicated and a legal remedy was adequate); *In re John P. Weitzel & Mary M. Weitzel 2007 Irrevocable Tr.*, No. A17-1698, 2018 WL 4201181, at *7 (Minn. Ct. App. Sept. 4, 2018) ("[E]quitable accounting is available where a fiduciary owes an equitable duty to account and the accounts at issue are exceedingly complicated."); *Dean*, 2018 WL 3614146 at *8 ("An equitable accounting is primarily available only 'when a fiduciary owes an equitable duty to account and when the accounts at issue are exceedingly complicated.'" (citation omitted)).

In sum, Minnesota caselaw suggests that an accounting requires a fiduciary relationship. Because Innes does not allege that Adams and Balboa owed him a fiduciary duty, (Innes' Mem. in Opp., Dkt. 49 at 25), his accounting claim should be dismissed.

## VI. Innes is not entitled to amend his counterclaims.

The above claims should be dismissed with prejudice because amendment would be futile. Innes has pleaded himself out of his fraud claim by alleging that he discovered the purported fraud over a month before the Transfer Agreement was executed. That cannot

be corrected by amendment. His defamation claim cannot be rescued because the parties agree on the only relevant statement at issue, and the non-defamatory nature of that statement will not be altered by amendment. His claims for conversion and bailment turn on a purely legal question about intangible property, and so he cannot amend to correct that legal deficiency. And his accounting claim cannot be saved because there is no fiduciary duty.

Innes also had ample opportunity to amend his counterclaims after conferring with plaintiffs about the defects, taking 45 days after the conferral to amend (despite originally agreeing to do so in 16 days). (*Compare* Meet-and-Confer Statement, Dkt. 27 *with* Am. Countercl., Dkt. 34.) By the time this motion is resolved, the case will have been pending for more than six months. It would be highly inefficient to allow Innes to amend, likely necessitating another round of pleadings motions. He already had a chance to amend, and no amendment can save his claims.

## CONCLUSION

Innes has cobbled together 21 claims arising out of the sale of his Roblox game. Plaintiffs have moved to dismiss some of the most facially defective of those claims. Having been given the chance to amend once, Innes has failed to establish the legal sufficiency of these counterclaims. They should be dismissed with prejudice.

Dated: October 27, 2026

**TAFT STETTINIUS & HOLLISTER LLP**

By: *s/ Andrew S. Dosdall*

Andrew S. Dosdall, Bar No. 0391076
ADosdall@Taftlaw.com
2200 IDS Center 80 South 8th Street
Minneapolis, MN 55402-2210
Telephone: (612) 977-8400
Facsimile: (612) 977-8650

and

Joseph M. Levy, *Pro Hac Vice*
JosephLevy@MarkowitzHerbold.com
**MARKOWITZ HERBOLD PC**
1455 SW Broadway, Suite 1900
Portland, OR 97201
Telephone: (503) 295-3085
Facsimile: (503) 323-9105

*Attorneys for Plaintiffs*
*Eli Adams and Reyna Balboa*

2499618.4